UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELIEZER TORRES, : | |
|     Plaintiff, : | |
| : | |
| v. : | Case No. 3:13-cv-1335 (SRU) |
| : | |
| TOWN OF BRISTOL, et al., : | |
|     Defendants. : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Eliezer Torres is currently incarcerated at the Hartford Correctional Center in Hartford, Connecticut. He commenced this action in state court asserting claims of false arrest, false imprisonment, illegal forfeiture of property, intentional infliction of emotional distress, deliberate indifference, municipal liability and invasion of privacy. Complaints filed *pro se* must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Torres's complaint, liberally construed, also makes out an excessive force claim, though he does not specifically enumerate it along with the others. The defendants are the Town of Bristol, Detectives Michael Brasche, David Plasczynski, Ken Gallup, Kevin Hayes, Garrie Dorman, Michael Duval and Scott Werner, and Detective Sergeants Paul Hines and Christopher Lennon. The defendants removed the action to federal court and have filed a motion for summary judgment. For the reasons that follow, the motion is granted.

I.    Standard of Review

    A motion for summary judgment may be granted only where there are no issues of

material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Rule 56(a), Fed. R. Civ. P.; *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The plaintiff must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 274 (2d Cir. 2009). If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment. *Harvey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir. 2008). The nonmoving party "must offer some hard evidence showing that its version is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). In addition, where the parties offer contradictory versions of the facts, one of which is "blatantly contradicted by the record," the court should not adopt the unsupported version when ruling on a motion for

summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

II.     Facts[1]

In August 2010, Detective Brasche learned from a confidential informant that someone was selling heroin from 16 Lincoln Place in Bristol. Detective Brasche discoverred that Torres was the person selling heroin. In September and October 2010, Detective Brasche and other Bristol police officers arranged for the confidential informant to purchase heroin from Torres on three occasions.

On October 26, 2010, Detective Brasche and other police officers were conducting surveillance in the area of 16 Lincoln Place. Detective Brasche saw a 1997 black Honda Civic that was registered to Torres drive from Lincoln Place to the area of 51 Summer Street. Detective Plasczynski observed Torres leave his car and enter a residence on Summer Street. While Torres was at the residence, several persons approached him and left after a brief period. Torres left the residence a short time later and drove away. Based upon his training and experience, Detective Plasczynski understood this activity to be consistent with the distribution of narcotics.

Detective Brasche followed Torres's car. A police officer working at a construction site at Margerie and Benham Streets was contacted and asked to stop Torres's car if it passed the construction site. When Torres approached the construction site the officer asked him to pull over onto Benham Street. Torres did so. Moments later, two unmarked police vehicles arrived at Benham Street. One pulled up behind Torres's car, the other parked across the street from Torres's car.

---

[1] The facts are taken from the parties' Local Rule 54(a) Statements and attached exhibits.

Detective Brasche and another officer approached Torres's car and confirmed that he had recently been on Summer Street. Detective Brasche then opened the car door, grasped Torres's left bicep and assisted him out of the car. While assisting Torres out of the car, Detective Brasche observed eight paper folds in plain view in the driver-side door armrest of the car. Detective Brasche did not move any objects in the car to view the paper folds. Based on his training and experience, Detective Brasche knew that the paper folds were consistent with the way heroin is packaged for street sale. Detective Brasche seized the narcotics and handcuffed Torres. During this process, Detective Brasche did not strike Torres or make any rude or mean comments. Torres states that he would have preferred that Detective Brasche ask him to exit the car rather than assisting him.

After being handcuffed, Torres was escorted to Detective Plasczynski who searched him and found $75.00 in Torres's wallet and $2,000.00 in his pants pocket. Detective Brasche did not observe the search. Torres told Detective Plasczynski that the $2,000.00 was from the sale of his car. On the evening of October 26, 2010, however, Torres did not have a bill of sale or any other documentation to support his statement. To date, Torres has presented no such evidence.

Detective Plasczynski seized the money. Torres's car also was seized.

A marked patrol car arrived and Torres was placed in the rear seat. While he was in the patrol car, Detective Hayes asked Torres whether there were additional drugs in his car. Torres said no. Torres asked Detective Hayes to loosen the handcuffs. No other defendants were in positions to hear this request. A short time later, Torres admitted that there were additional narcotics in the driver-side compartment on the dashboard. When this area was searched, police found an additional sixty paper folds containing a brown powdery substance that tested positive

4

for heroin.  Torres told Detective Hayes that the narcotics were his.

Torres alleges that his handcuffs were very tight, causing indentations in his skin and scrapes and bruises.  While in police custody, Torres did not seek medical attention and did not seek medical treatment after his release.  During his deposition, Torres stated that he did not think that the injuries required medical attention.

Torres was taken to the Bristol Police Department where Detective Sergeant Lennon authorized Detective Hayes to conduct a strip search for possibly concealed narcotics.  The search was conducted in a separate room.  No narcotics were found.

After the motor vehicle stop, Detective Brasche and other officers executed a narcotics search warrant at Torres's residence, 16 Lincoln Place.  The warrant had been obtained several days earlier.  Five bags containing brown paper folds of a brown powdery substance that tested positive for heroin were discovered.  Mail addressed to Torres, confirming that it was his residence, also was found.

Detective Sergeant Lennon submitted paperwork requesting that the state prosecute a civil forfeiture action against the $2,075.00 in cash and Torres's 1997 Honda Civic.  The state attempted to notify Torres about the proceeding by certified mail, but was unsuccessful.  The court ordered supplemental notice of the proceeding published in the local paper.  Notice was published in The Bristol Press on January 25, 2011.  Torres did not appear in the proceeding.  On February 17, 2011, the state moved for default judgment which was granted.  In rendering the judgment of forfeiture. the court found that Torres's property was lawfully seized and subject to forfeiture.  On June 21, 2012, Torres moved to open the judgment.  The court sustained the state's objection to Torres's request.

On July 26, 2011, Torres entered a guilty plea to one count of possession of narcotics with intent to sell. During sentencing, Torres agreed that he possessed heroin and intended to sell it. The forfeiture of his property was discussed during sentencing. Torres made no complaint about the forfeiture. In exchange for the guilty plea, three related pending criminal matters were nolled. Torres was represented by counsel during the plea and sentencing. Torres was sentenced to a term of imprisonment of five years, execution suspended after eighteen months.

Prior to the October 26, 2010 arrest, Torres had been arrested over five times. Torres complained that he was depressed but could only describe one symptom: loneliness when he was alone. Torres has never received mental health treatment and has never been diagnosed as suffering from depression. Torres's first child was born shortly before a prior term of imprisonment commencing in 2006. He states that he was not as upset about not seeing his children then as he was following the 2010 arrest. Torres also stated that he did not see his children because their mother stopped bringing them to visit.

III.   Discussion

Torres includes seven counts in his complaint: (1) federal claims for false arrest and use of excessive force, (2) false imprisonment, (3) illegal forfeiture of property and denial of due process in connection therewith, (4) intentional infliction of emotional distress by negligence, (5) deliberate indifference to proper procedures for a motor vehicle stop, searches and seizures and the responsibility to report misconduct by other officers, (6) state law claims for indemnification and municipal liability, and (7) a federal claim for invasion of privacy premised on the allegedly illegal motor vehicle stop, search, seizure and arrest.

The defendants move for summary judgment on eight grounds: (1) many of the claims are barred by the holding in *Heck v. Humphrey*, (2) the force used during his arrest was reasonable, (3) Torres's underlying criminal proceeding did not terminate in his favor, (4) the defendants are protected by qualified immunity, (5) Torres fails to state a cognizable *Monell* claim, (6) the searches were constitutional, (7) Torres fails to state a cognizable claim for emotional distress, and (8) Torres claims pursuant to Conn. Gen. Stat. § 52-557n are unsustainable.

### A.   *Heck v. Humphrey*

The defendants first argue that Torres's claims in Counts One, Two, Three, Five and Seven, *i.e.*, the claims for false arrest, false imprisonment, excessive force, forfeiture of property, deliberate indifference and invasion of privacy are barred by the holding in *Heck v. Humphrey*, 512 U.S. 477 (1994).  The Supreme Court has held that, if a determination favorable to the plaintiff in a section 1983 action "would necessarily imply the invalidity of his conviction or sentence," the plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid before he can recover damages under section 1983.  512 U.S. at 486-87.  In a footnote, the Supreme Court noted that a section 1983 claim for an unreasonable search could survive the *Heck* rule.

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction is unlawful.

*Id.* at 487 n.7.

The defendants contend that Torres's guilty plea was based on the evidence found in the

searches of his person and car.  They argue that, if this Court were to conclude that the stop preceding those searches was unlawful, Torres's conviction would necessarily be invalid.  I disagree.

Courts have held that the *Heck* exception does not apply where the entire evidentiary basis for a criminal charge derives from a single episode involving a single search that is being questioned in a section 1983 action.  *See, e.g., Clayton v. City of Poughkeepsie*, No. 06 Civ. 4881 SCR, 2007 WL 2154196, at *4 (S.D.N.Y. June 21, 2007); *Acevedo v. Fischer*, No. 12-cv-6866(RA), 2014 WL 5015470, at *6 (S.D.N.Y. Sept. 29, 2014).  Here, however, the defendants state that they arranged for a confidential informant to purchase narcotics from Torres on three occasions and had obtained a warrant to search Torres's residence.  The search revealed narcotics.  Although the search warrant was executed after the motor vehicle stop, the warrant was obtained several days earlier and did not depend on the stop.  Thus, the evidence against Torres did not derive solely from the motor vehicle stop.  Thus, even if the motor vehicle stop were found unconstitutional, Torres's conviction would not necessarily be invalid.  The defendants' motion for summary judgment is denied on the ground that *Heck* precludes Torres's claims in Counts One, Two, Three, Five and Seven.

        B.        <u>False Arrest and False Imprisonment / Favorable Termination</u>

The defendants contend that any claims for false arrest and false imprisonment are not cognizable because the charges did not terminate in Torres's favor.  When evaluating section 1983 claims for false arrest and false imprisonment, the federal court looks to state law.  *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).  In Connecticut, the law for false arrest and false imprisonment is identical.  *See Outlaw v. City of Meriden*, 43 Conn. App. 387, 392, 682

8

A.2d 1112, 1115 (1996).

One of the elements of a false arrest claim under section 1983 in Connecticut is the favorable termination of the charges for which the plaintiff was arrested. *See Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (citing *Roesch v. Otarola*, 980 F.2d 850, 853-54 (2d Cir. 1992)); *see also Pouncy v. Ryan*, 396 F. Supp. 126, 128 (D. Conn. 1975) (conviction on charges growing out of arrest negated claims for false arrest and false imprisonment). To establish favorable termination without a trial, Torres must show that the charges were dismissed under circumstances indicating an abandonment of the charges by the prosecutor without any arrangement with Torres. *See Ruttkamp v. De Los Reyes*, No. 3:10-cv-392 (SRU), 2012 WL 3596064, at *12 (D. Conn. Aug. 20, 2012). Where charges are nolled, the "favorable termination" element may or may not be satisfied, depending on whether they are nolled as part of a plea bargain (which is to say, their being nolled is conditioned upon something). *See id.* In that case, the nolled charges did not terminate in the criminal defendants' favor. But if the charges were nolled in circumstances amounting to abandonment of the charges, irrespective of any bargain or agreement, then the "favorable termination" element is met. *See Roberts v. Babkiewicz*, 582 F.3d 418, 420-22 (2d Cir. 2009).

The defendants have submitted a copy of the transcript of the plea and sentencing which indicates that Torres entered his guilty plea on the charges stemming from the search of his vehicle. Although the prosecutor implied that the evidence was seized pursuant to the search warrant, he references the 60 bags of heroin and cash that was found during the motor vehicle stop. *See* Defs.'s Mem. Ex. L, Doc. #29-23, at 4-5 (referencing the 60 bags of heroin and the cash). The transcript makes clear that other charges stemming from this surveillance and

investigation of Torres were dropped "as part of the agreement." *Id*. at 3-4; *see also id.* at 6. Thus, none of the charges terminated in Torres's favor. The defendants' motion for summary judgment is granted with respect to to the false arrest and false imprisonment claims.

### C. Excessive Force

Torres alleges that the defendants used excessive force against him during the motor vehicle stop. Specifically, that Detective Brasche grasped his arm and helped him exit the car and then applied the handcuffs too tightly. The defendants contend that the force used was reasonable.

The use of excessive force by police officers prior to arraignment violates the Fourth Amendment's prohibition against unreasonable seizures. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). To prevail on his excessive force claims, Torres must show that the amount of force used was objectively unreasonable, and that, as a result of the use of force, he suffered some compensable injury. *See id.* at 396; *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004). In addition, Torres must provide evidence that each defendant against whom an excessive force claim is asserted was personally involved in the use of excessive force. *See Wright v. Smith*, 21, F.3d 496, 501 (2d Cir. 1994).

Reasonableness is determined from the perspective of a reasonable officer on the scene and not in hindsight. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The plaintiff must show that the level of force used

was "sufficiently serious or harmful enough to be actionable. A *de minimis* use of force will rarely suffice to state a Constitutional claim." *Rodriguez v. Village of Ossining*, 918 F. Supp. 2d 230, 238 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

In *Rodriguez*, the police officer grabbed the plaintiff's arm to try to remove her from a vehicle. The court found this use of force *de minimis* and not actionable. *Id.* Other courts have held that similar actions do not constitute excessive force. *See, e.g., Jennejahn v. Village of Avon*, 575 F. Supp. 2d 473, 476, 481 (W.D.N.Y. 2008) (holding that allegations that police officer violently grabbed plaintiff's arm, spun him around, forcefully grabbed his shoulder and applied handcuffs tightly without evidence of any injuries did not constitute excessive force and citing cases granting summary judgment under similar circumstances). Torres alleges only that Detective Brasche grasped his arm to help him exit the car and that the handcuffs were too tight. He requested no medical attention from the police and sought no medical attention after his release. During his deposition, he stated that he did not think any injuries required medical attention.

Similarly, Torres has no right not to be handcuffed. *See Soares v. Connecticut*, 8 F.3d 917, 922 (2d Cir. 1993) ("Neither the Supreme Court nor the Second Circuit has established that a person has a right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee."). The court applies the same reasonableness standard in evaluating the use of handcuffs. Although Torres alleges that the handcuffs caused him to experience severe pain, he sought no medical treatment for any alleged injuries and he claims to have suffered only indentations or scrapes to his wrists. Torres has provided no evidence of any injuries suffered.

Based on the absence of any evidence showing that Torres suffered a compensable injury,

11

no reasonable jury could find other than that the force used was *de minimis*. The defendants' motion for summary judgment is granted with respect to the excessive force claims.

      D.      <u>Illegal Search and Seizure</u>

Police officers are permitted to stop a motor vehicle if they have reasonable suspicion of drug trafficking. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). Reasonable suspicion is determined based on the totality of the circumstances. It is "the quantum of knowledge sufficient to induce an ordinary prudent and cautious person under the circumstances to believe that criminal activity is at hand." *United States v. Cummings*, 764 F. Supp. 2d 480, 504 (E.D.N.Y. 2011). Reasonable suspicion need not rise to the level of probable cause. *See United States v. Arvizu*, 534 U.S. 266, 273-74 (2002).

Here, the defendants knew that Torres was a drug dealer; they had information from a confidential informant and had conducted three arranged purchases of narcotics. On October 26, 2010, Torres was under surveillance. Detectives Brasche and Plasczynski observed Torres engage in activity consistent with the sale of narcotics. When he left the scene, they followed him. These facts are very similar to the facts in *Cummings*, where drug enforcement agents had received a tip that Cummings was selling narcotics and then observed activity consistent with that activity. 764 F. Supp. 2d at 507-08. I conclude that the defendants have presented evidence showing that they had a reasonable suspicion that Torres was engaged in selling narcotics. Thus, they were permitted to stop his car.

When a car is lawfully stopped, the driver has no Fourth Amendment interest in not being ordered out of the stopped vehicle. *See Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000) (citing *Maryland v. Wilson*, 519 U.S. 408 (1997)); *see also Pennsylvania v. Mimms*, 434 U.S.

106. 111 (1977) (additional intrusion caused by asking driver to exit vehicle is *de minimis*).  In addition, once the vehicle is lawfully stopped, the police officer may look through the windows from the outside.  Even if the officer uses a flashlight to illuminate the inside of the vehicle, this is not considered a search within the meaning of the Fourth Amendment.  *Id.* (citing cases).

Once the defendants stopped Torres, they were permitted to require him to exit the vehicle.  In addition, they were permitted to look into the vehicle.  When Detective Brasche looked into Torres's car, he observed eight paper folds of heroin in plain view in the driver's-side door armrest.  A police officer may seize items "in plain view if: (1) the officer's initial intrusion was permissible under the Fourth Amendment; (2) the discovery of evidence is inadvertent; and (3) the nature of the evidence found is immediately apparent." *United States v. Graham*, 119 F. Supp. 2d 116, 126 (D. Conn. 2000) (quoting *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir.), *cert. denied*, 513 U.S. 877 (1994) (internal quotation marks omitted)).

After Detective Brasche found the eight packets of heroin, there was probable cause to arrest Torres and search both Torres and his car incident to that arrest.  *See Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473, 2483-84 (2014) (search of person incident to custodial arrest "requires no further justification"; search incident to arrest exception to the warrant requirement permits police officers to search a vehicle's passenger compartment "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle" (internal quotations omitted)).  Thus, the search of Torres's person and the further search of the passenger compartment were lawful.  The defendants properly seized the money and additional drugs found in these searches.

The defendants' motion for summary judgment is granted with respect to all illegal search

and seizure claims.

     E.    <u>Forfeiture</u>

Torres also challenges the forfeiture of his money and car on the grounds that he was denied due process in connection with the forfeiture proceeding and that the forfeiture constitutes theft under state law. *See* Doc. #1 at 11-12.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, Section 1. To determine whether a constitutional violation has occurred, the court must consider the process provided by the State and determine whether that process was constitutionally adequate. *See Zinnermon v. Burch*, 494 U.S. 113, 126 (1990). In most cases, the Supreme Court requires a pre-deprivation hearing. However, "[i]n some circumstances ... a statutory provision for a post-deprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinnermon*, 494 U.S. at 128. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). When evaluating what process is required, the Supreme Court had distinguished between claims based on established state procedures and claims based on random unauthorized actions of state employees. If the conduct is random and unauthorized, procedural due process is satisfied as long as the State provides a meaningful post-deprivation remedy. *See Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006); *Salatto v. City of Milford*, 3:08-cv-1071(MRK), 2012 WL 774612 (D. Conn. Mar. 7, 2012) (noting that government cannot anticipate random and unauthorized

actions to afford pre-deprivation hearing).

Here, Torres alleges that the defendants improperly stopped his car and subsequently searched his person and seized the money and his car. He argues that the defendants were not properly trained. Torres has not, however, identified any municipal policy of conducting illegal motor vehicle stops, ignoring Fourth Amendment protections against an illegal search and seizure, or a consistent practice of failing to train police officers. Thus, the seizure was not pursuant to an established state procedure. As long as the post-deprivation process was adequate, there is no due process violation.

The State held a civil forfeiture proceeding. Notice was sent to Torres by certified mail pursuant to statutory requirement. *See* Conn. Gen. Stat. § 54-36h. When such notice was unsuccessful, the state court ordered notice by publication. Torres did not appear at the proceeding and a default judgment was entered against him. Torres had the opportunity to appeal the judgment but did not do so in a timely manner. Torres has presented no evidence suggesting that the civil forfeiture proceeding was inadequate to protect his rights to his property. Accordingly, the defendants' motion for summary judgment is granted with respect to the due process claim relating to the forfeiture of Torres's property.

  F.  <u>Invasion of Privacy</u>

Torres's claim for invasion of privacy is a recasting of his federal claims for illegal motor vehicle stop, illegal seizure, illegal search, false arrest and use of excessive force. Because the defendants' motion for summary judgment was granted with respect to those federal claims, the motion also is granted with respect to the invasion of privacy claim.

  G.  <u>Claim Against City of Bristol</u>

Municipalities and other local government units may be included as defendants under section 1983. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978). To sustain a claim under *Monell*, Torres must show that an official policy, practice or custom was the "motivating force [behind] the constitutional violation." *Dodd v. City of Norwich*, 827 F.2d 1, 5 (2d Cir. 1987). A municipality cannot be held liable under section 1983 solely on a theory of respondeat superior. *See Monell*, 436 U.S. at 694-95. There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). That link must be established by more than mere allegations; Torres must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of County Comm'rs Bryan County, Okla, v. Brown*, 520 U.S. 397, 404 (1997).

Torres has described one incident. He presents no evidence showing a policy or practice of falsely arresting and illegally searching citizens. Accordingly, there is no factual basis for a claim against the City of Bristol.

Torres has named the individual defendants in their official capacities. A suit against a police officer in his official capacity, in essence, is a suit against the city for which he works. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) (noting that suit against municipal official in his official capacity was a suit against the municipality because liability for any judgment would rest with the municipality). Because there is no basis for a suit against the City of Bristol, there can be no basis for a suit against the officers in their official capacities. The defendants' motion for summary judgment is granted with respect to those claims.

H.   State Law Claims

Supplemental or pendent jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 715-16 (1966). Where all federal claims have been dismissed before a trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases). Because I have granted the defendants' motion for summary judgment on all federal claims, I decline to exercise supplemental jurisdiction over the remaining state law claims.

IV.     Conclusion

The defendants' motion for summary judgment [**Doc. #29**] is **GRANTED** with respect to all federal claims. All state law claims are dismissed without prejudice. The clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** this 27th day of March 2015, at Bridgeport, Connecticut.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge